Terry W. ROACH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000141–DG.

Supreme Court of Kentucky.

Sept. 20, 2012.

Rehearing Denied Dec. 20, 2012.

---

Meggan Elizabeth Smith, Department of Public Advocacy, LaGrange, KY, Marguerite Neil Thomas, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, David Wayne Barr, Assistant Attorney General, Office of Attorney General,

Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

In June 2002, Terry Roach pled guilty in the McCracken Circuit Court to the January 2001 armed robbery and murder of Clifford Donald Robinson in Paducah. He was sentenced to life in prison without the possibility of parole for twenty-five years. This Court affirmed Roach's conviction in an unpublished Opinion that became final in January 2004. Pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42, in March 2004 Roach filed in the trial court a *pro se* motion seeking relief from the court's Judgment. He also requested an evidentiary hearing and assistance from the Department of Public Advocacy (DPA). The trial court granted the latter request in March 2004, and in May 2004 a DPA attorney entered his notice of appearance on Roach's behalf. For reasons not apparent from the record, the matter was then allowed to lie dormant for more than four years, until September 2008, when counsel finally filed his amendment to Roach's original motion. At that point, the trial court denied the motion without a hearing, finding in a brief order that counsel's amendment was untimely—both outside the three-year statute of limitations and barred by laches—and that on the merits the claims in Roach's original motion were refuted by the record. The Court of Appeals affirmed, and we granted discretionary review to consider whether the courts below correctly deemed counsel's amendment to Roach's motion untimely, and whether Roach was entitled to an evidentiary hearing. Although our reasoning differs somewhat from that of the trial court and the Court of Appeals, which did not apply Kentucky Rule of Civil Procedure (CR) 15, we agree with those courts that to the extent the amended motion sought to raise a new, factually independent claim it was subject to dismissal as untimely, and we also agree that Roach's timely claims are facially without merit. Accordingly, we affirm the decision of the Court of Appeals.

### RELEVANT FACTS

According to police reports, in the early morning hours of January 31, 2001, EMS personnel responding to a 911 call found Donald Robinson's body slumped over in the cab of his pickup truck, which was parked in the 2100 block of Park Avenue in Paducah. An autopsy later confirmed that Robinson died from two gunshot wounds to the head, inflicted at close range. About two weeks after the body was found, an anonymous caller reported to police investigators that Terry Roach had claimed responsibility for the shooting and had fled to Atlanta, Georgia. The investigators interviewed Roach's girlfriend, who confirmed that Roach had admitted both shooting Robinson and taking drugs and money from him. With the girlfriend's consent, the officers then recorded two phone conversations between the girlfriend and Roach, who was indeed in Atlanta, and who in the course of the conversations made incriminating statements. Roach was eventually arrested in Illinois and extradited to McCracken County, where he had been indicted earlier for murdering Robinson and for robbing him.

Because of the aggravating circumstance of the robbery, the Commonwealth announced that it would seek the death penalty for Robinson's murder. Roach retained private counsel, who, having unsuccessfully endeavored to remove the death penalty from the case, apparently advised Roach that if he went to trial he ran a very significant risk of being sentenced to death and urged him, therefore, to accept

the Commonwealth's plea-bargain offer of life in prison without the possibility of parole for twenty-five years. In late May of 2002, within a week of Roach's trial, the police obtained a statement from another witness who claimed that during the late evening of January 30, 2001 he had heard Roach say that he had just shot Robinson, and had seen Roach transfer a handgun to another person. A few days later, on June 3, 2002, Roach accepted the Commonwealth's offer and pled guilty to both murder and first-degree robbery. At the *Boykin* hearing, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the trial court explained the constitutional rights Roach was waiving and received Roach's assurances that he understood his rights, that he was proceeding voluntarily and not as a result of threats or unstated promises, and that he was pleading guilty because he was in fact guilty. On this last point, the trial court asked Roach whether he had shot and killed Robinson and whether he had taken money from him, and to both questions Roach replied that he had.

A couple of months later, on August 8, 2002, Roach returned to court for sentencing. During that proceeding the court allowed Roach to make a statement, and Roach asserted that he had been "forced" to plead guilty, but having decided that he could not "go down for something that I didn't do," he moved to withdraw his plea. In denying the motion, the court recalled Roach's emphatic admission of the offenses during his plea colloquy and deemed incredible Roach's suggestion that his privately retained attorneys had forced him to plead guilty. Roach appealed from that ruling to this Court, which held that the trial court had not abused its discretion by denying Roach's withdrawal motion without inquiring further into the circumstances surrounding the voluntariness of his guilty plea. *Roach v. Commonwealth,*

2003–SC–0013–TG, 2003 WL 22971265 (Ky. Dec. 18, 2003).

That decision became final in January 2004, and, as noted above, in March of that year, Roach, *pro se,* filed a timely RCr 11.42 motion in which he claims that his guilty plea was tainted by his trial attorneys' ineffective assistance. Appealing now from the denial of that motion, Roach first contends that both the trial court and the Court of Appeals erred by disregarding as untimely his appointed counsel's long delayed amendment of Roach's timely *pro se* pleading. We disagree.

### *ANALYSIS*

**I. To the Extent That Roach's Amended Motion Raised Claims Factually Unrelated to the Claims Raised In His Original Motion, They Did Not Relate Back and Were Untimely.**

Section 10 of RCr 11.42 imposes a three-year limitations period "after the judgment becomes final" for filing motions under that rule. The question here is what effect the limitations period has on amendments to RCr 11.42 motions. Neither RCr 11.42 itself, nor any other provision of the Criminal Rules addresses whether and how motions under the rule may be amended. RCr 13.04 instructs that gaps like this in the Criminal Rules may be filled by the pertinent Civil Rules. CR 15 is the Civil Rule governing amendments to pleadings, and this Court has indicated that CR 15 is applicable to RCr 11.42 motions. *Hodge v. Commonwealth,* 116 S.W.3d 463, 472 (Ky. 2003); *Bowling v. Commonwealth,* 926 S.W.2d 667, 670 (Ky.1996).

▮ CR 15 allows pleadings to be amended "once as a matter of course at any time before a responsive pleading is served," but otherwise "only by leave of court or by written consent of the adverse

party; and leave shall be freely given when justice so requires." CR 15.01. Under CR 15, amendments proffered after the statute of limitations has run relate back to the date of the (timely) original pleading provided that the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." CR 15.03(1). As noted, Roach filed his original motion well within the limitations period (which ended in January 2007), but counsel did not proffer the amended motion until September 2008, more than one and one-half years after the three-year limitations period had expired. The amended motion was untimely, therefore, unless its claims arose from the same "conduct, transaction, or occurrence" Roach set forth or attempted to set forth in his original motion.

Our case law construing the relation-back rule is sparse, but in *Underhill v. Stephenson,* 756 S.W.2d 459 (Ky.1988), a medical malpractice case, we held that the plaintiffs should have been allowed to amend their complaint to bring in additional parties even after the limitations period had expired because the amended claims clearly arose from the same personal injury alleged in the original complaint. "The important consideration," under CR 15.03(1), we explained, "is not whether the amended pleading presents a new claim or defense, but whether the amendment relates to the general factual situation which is the basis of the original controversy." 756 S.W.2d at 460 (citing *Perkins v. Read,* 616 S.W.2d 495 (Ky.1981)).

How this standard is to apply in the RCr 11.42 context is not immediately apparent, but we find helpful the United States Supreme Court's application of the very similar Fed. Rule Civ. Proc. 15(c) in *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). *Mayle* involved an attempt by a habeas petitioner to amend his timely *pro se* petition with the aid of counsel outside the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1). As does our rule, what was then Fed. Rule Civ. Proc. 15(c)(2) and is now, after amendment in 2007, Fed. Rule Civ. Proc. 15(c)(1)(B) permits such an amendment to relate back to the filing date of the original pleading when both the original pleading and the amendment arise from the same "conduct, transaction, or occurrence." The petitioner's original petition sought relief under the Sixth Amendment on the ground that a witness's videotaped police statement had been improperly admitted at trial. His amended petition sought to add a claim under the Fifth Amendment on the ground that his own statement to police during pretrial interrogation had been coerced. The petitioner maintained both claims related to the same transaction or occurrence, namely his trial and conviction. The Supreme Court rejected this broad reading of "transaction or occurrence." Upholding, in effect, the trial court's disallowance of the amendment, the Supreme Court held that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 545 U.S. at 650, 125 S.Ct. 2562. A broader rule, the Court explained, would tend to undermine the statute of limitations: "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." 545 U.S. at 659, 125 S.Ct. 2562 (quoting from *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1259 n. 29 (9th Cir.1982)). Because the

petitioner's Fifth and Sixth Amendment claims were not based on a core of common facts but rather on facts that differed in both time and type, the amended claim did not relate back and so was properly disallowed as untimely.

■ As was the Supreme Court in *Mayle*, we too are concerned that CR 15.03's relation-back provision not be read so broadly as to undermine the already generous RCr 11.42 three-year limitations period. To that end, we hold that relation back in the RCr 11.42 context should be limited to amended pleadings amplifying and clarifying the original claims, and to amendments adding claims only if the new, otherwise untimely claims are related to the original ones by shared facts such that the claims can genuinely be said to have arisen from the same "conduct, transaction, or occurrence." New claims based on facts of a different time or type will not meet that standard and so, generally, should not be allowed.

■ This result is hardly surprising given that even amendments proffered within the limitations period are subject to other sorts of timeliness considerations. As noted above, CR 15.01 permits a pleading to be amended once as a matter of course before a responsive pleading has been served and thereafter only by consent of the adverse party or by leave of court. In considering whether to grant leave, the court may take the movant's delay or any dilatory motive into account. *Krupski v. Costa Crociere S.p.A.*, ── U.S. ──, 130 S.Ct. 2485, 2496, 177 L.Ed.2d 48 (2010) (discussing the similar federal rules; citation and internal quotation marks omitted). Of course, responsive pleadings to RCr 11.42 motions are often not served until after appointed counsel has proffered an amended motion, but even assuming that such an amendment within the limitations period would thus be permitted "as a matter of course" under CR 15.01, it would nevertheless still be subject to RCr 11.42(10)'s provision to the effect that an otherwise timely RCr 11.42 motion may be barred when "unreasonable delay in filing ... has prejudiced the Commonwealth's opportunity to present relevant evidence to contradict or impeach the movant's evidence." Since even amendments within the RCr 11.42 limitations period are thus subject to scrutiny on the basis of unreasonable delay, it is all the more fitting that amendments proffered outside the limitations period be strictly limited to those relating back to a core of factual allegations of which the Commonwealth has been given timely notice.

In this case, Roach's original, timely motion asserted that his guilty plea was involuntary because it was induced by two instances of counsel's ineffectiveness. First, Roach maintained that there were no aggravating circumstances in his case and that trial counsel therefore misadvised him to accept an aggravated sentence of life without the possibility of parole for twenty-five-years. Roach also maintained that counsels' failure to seek suppression of the incriminating phone conversations between Roach and his girlfriend amounted to the neglect of a viable defense, apparently a reasonable-doubt defense.

Post-conviction counsel's belated amendment of the motion did not attempt to bolster directly either of Roach's claims, but it did raise two additional claims: a claim that trial counsel had coerced Roach's guilty plea by emphasizing the risk of the death penalty if Roach went to trial (the "coercion claim"), and a claim that counsel failed to investigate a potential alternate perpetrator defense based on a statement they had received from Cornell Holland (the "Holland claim"). We address each of these separately, beginning with the Holland claim.

■ Police investigators had found Holland in possession of the gun used to kill Donald Robinson. A witness, the witness referred to above who came forward about a week before Roach's trial was to begin, had told them that on the night of the shooting he had seen Roach sell a handgun to Holland. Holland told them, however, as he subsequently told Roach's lawyers, that he had purchased the gun from someone other than Roach and did not believe that Roach was the killer. At the time he made his statements, Holland was himself incarcerated in the Hardin County Jail. In his amended motion, Roach maintained, apparently, that trial counsel had not tried hard enough to find this "other person" from whom Holland had allegedly purchased the gun. As a sort of addendum to this claim, post-conviction counsel asserted that an alleged videotape of Holland's statement to the police did not appear in the police file, a violation, according to counsel, of the Fourteenth Amendment.

Because this Holland claim is based on facts of a type different from the alleged facts underlying the claims in the original motion—counsels' alleged failure to investigate Holland as opposed to counsels' alleged misinterpretation of the sentencing laws and counsels' failure to seek suppression of Roach's phone conversations with his girlfriend—the Holland claim cannot be said to have arisen from the same "conduct, transaction, or occurrence" as the original claims and so does not qualify for relation back under CR 15.03(1). *Cf. Pinchon v. Myers,* 615 F.3d 631 (6th Cir.2010) (Amendment raising claims unrelated to original claims did not relate back.); *United States v. Ciampi,* 419 F.3d 20 (1st Cir. 2005) (Untimely amendments asserting different type of attorney malfeasance do not relate back.). The trial court, therefore, correctly disallowed as untimely the proffered amendment of Roach's motion with respect to the Holland claim.

The proffered amendment with respect to the coercion claim is a harder call. Arguably perhaps the amendment alleging that counsel coerced Roach to plead guilty by exaggerating the risk of the death penalty can be construed as an amplification or a clarification of Roach's original claim that counsel misadvised him about the possibility of an aggravated sentence. Even if the trial court should have allowed the relation back of the coercion claim, however, Roach is not entitled to relief, because, as the Court of Appeals ruled, that claim, like Roach's two original claims, is meritless.

Before turning to the merits of Roach's claims, however, we address Roach's objections to our conclusion that the Holland-claim amendment was properly dismissed as untimely. Roach contends first that under CR 15.03 the pertinent "conduct, transaction, or occurrence" was "the entry of [Roach's] guilty plea and trial counsel's conduct leading to his guilty plea." According to Roach then, since the Holland-claim amendment concerned counsels' conduct leading to the plea, it should have related back under the rule. Obviously, however, to construe the rule as broadly as Roach suggests would be to allow virtually any claim whatsoever to relate back and so would largely negate the RCr 11.42(10) limitations period. As noted above, we are convinced that the relation-back rule must be construed to harmonize with, not to undermine, the limitations rule.

Roach argues that if amendments to timely *pro se* RCr 11.42 motions are subjected to limitations and are not allowed freely to relate back, then *pro se* motions filed close to the end of the limitations period will leave appointed counsel insufficient time to raise additional meritorious claims. That result, however, is simply a consequence of having a limitations period

and is no more unfair than the complete barring of the movant's claims when the initial motion is itself untimely. It is a result, moreover, that the movant can avoid by prosecuting his claim diligently.

■ Finally, Roach maintains that even if his amended motion is not to be deemed timely through the relation-back provision of CR 15.03, it should nevertheless be allowed under the doctrine of equitable tolling, the doctrine that a statute of limitations will not bar an untimely claim if, despite the claimant's diligent efforts, extraordinary circumstances prevented a timely filing. Roach did not present this issue to either the trial court or the Court of Appeals, and we need not, to answer Roach's contention, decide whether equitable tolling could ever apply to an untimely RCr 11.42 motion, for even if it could it would not apply here. As the United States Supreme Court recently reiterated, in a case in which it recognized equitable tolling as applicable to habeas petitions under the AEDPA, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, —— U.S. ——, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (citation and internal quotation marks omitted). Roach cannot satisfy the first of these requirements. To be sure, he diligently filed his original motion within just of couple of months of our decision rejecting his direct appeal, but he then failed, for more than four years, as the end of the limitations period came and went, to make any inquiry of the court or of counsel as to why his motion had not been amended and his case moved forward. This was not a diligent pursuit of his rights, and thus his untimely amended motion does not qualify for equitable tolling.

## II. To The Extent That Roach's Claims are Timely, the Trial Court Correctly Found That They Do Not Entitle Roach to Relief.

We now turn to the merits of Roach's original motion. Roach claims, first, that because his crime was not attended by an aggravating circumstance he was not subject to an aggravated sentence and so should not have been advised to accept a sentence of life without the possibility of parole for twenty-five years for the murder. As the Court of Appeals correctly noted, however, under Kentucky Revised Statute (KRS) 532.025(2)(a)2, a murder committed in the course of a first-degree robbery is indeed deemed an aggravated offense subject to capital sentencing, including a sentence of life without the possibility of parole for twenty-five years. KRS 532.030(4). Roach pled guilty to both murder and first-degree robbery. Counsel did not, therefore, advise Roach to accept an illegal sentence.

■ Nor did counsel coerce Roach to plead guilty, as Roach maintains in his amended motion, merely by seeking to impress upon him the risk he would run, if he went to trial, of being sentenced to death. The death penalty was a very real possibility in this case, and counsel's providing "accurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive." *United States v. Green*, 388 F.3d 918, 923 (6th Cir.2004). *See also, Commonwealth v. Elza*, 284 S.W.3d 118, 122 (Ky.2009) (Counsel's telling the defendant that if he went to trial he would "assuredly" receive the death penalty was not coercive where a strong possibility of the death penalty made that advice reasonable.).

■ Finally, Roach claims that the voluntariness of his guilty plea is called into question by the fact that trial counsel did

not move to suppress the tape-recorded phone conversations between Roach and his girlfriend in which Roach made incriminating statements. According to Roach, that evidence was subject to suppression because the girlfriend's consent to the tape-recording had been coerced. *Major v. Commonwealth*, 275 S.W.3d 706 (Ky. 2009) (noting that Kentucky law allows the taping of phone conversations provided that at least one party to the conversation consents); *Commonwealth v. Clark*, 516 Pa. 599, 533 A.2d 1376 (1987) (discussing voluntariness in the context of consent to wire tapping). Had that evidence been suppressed, Roach further maintains, the Commonwealth's case against him would have been so weakened that rather than plead guilty he would have preferred to take his chances at trial.

 While Roach is correct that "the voluntariness of [a] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases," *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citation and internal quotation marks omitted), to be entitled to relief under RCr 11.42, the movant must "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42(2). Conclusory allegations that counsel was ineffective without a statement of the facts upon which those allegations are based do not meet the rule's specificity standard and so "warrant a summary dismissal of the motion." *Id. See Williams v. Commonwealth*, 336 S.W.3d 42 (Ky.2011) (RCr 11.42 movant's failure to specify what evidence unsubpoenaed witnesses would have provided was

fatal to his claim that counsel was ineffective in having failed to subpoena them.).

Here, Roach has failed to specify facts supporting his claim that the girlfriend's consent was "coerced." He asserts that the police somehow threatened the girlfriend, but he fails to allege the threat with any particularity,[1] and it is that level of factual specificity that RCr 11.42(2) requires, for without it the trial court cannot tell whether an evidentiary hearing is necessary. If general allegations such as "her consent was coerced by police" were sufficient, RCr 11.42 would easily be turned into a discovery device, a result which we have several times noted is contrary to the rule's purpose. *See e.g., Mills v. Commonwealth*, 170 S.W.3d 310 (Ky.2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009); *Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky.2002), *cert. denied*, 540 U.S. 838, 124 S.Ct. 96, 157 L.Ed.2d 70 (2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009). Because Roach's motion did not satisfy RCr 11.42(2)'s specificity requirement, it was subject under the rule to "summary dismissal," as the courts below correctly held.

### CONCLUSION

In sum, the Court of Appeals correctly upheld the McCracken Circuit Court's denial of Roach's motion for RCr 11.42 relief. Although RCr 11.42 motions are subject to amendment pursuant to CR 15, to the extent that Roach attempted to add a new, factually distinct claim to his motion outside the three-year limitations period, that claim did not relate back for CR 15 purposes, and so the trial court properly disallowed the amendment as untimely. To the

---

1. Particularity would have included some or all of the following: when the girlfriend was threatened; where she was physically at the time of the threat; who else was present; who made the threat or, if the identity of the police officer was unknown, a physical description of the person; and the substance of the threat.

extent that Roach's motion was timely, it failed to allege specific facts supportive of Roach's claims that his girlfriend's consent was coerced and it was legally baseless insofar as he contends he was not eligible for the death penalty or the other aggravated penalties. Therefore, the trial court properly denied the motion. Accordingly, we affirm, on somewhat different reasoning, the decision of the Court of Appeals.

All sitting. All concur.